# Exhibit B

LITTON LOAN LEGAL DEPT Fax:713-966-8E        Oct 21 2009 09:09am P004

CODE 4085

**IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA**
**IN AND FOR THE COUNTY OF WASHOE**

TIMOTHY BURKE, et al
_____
Plaintiff(s),

vs                                          Case No. CV09-03134

LITTON LOAN SERVICING, LP
_____
Defendant(s).                               Dept. No. _____

_____/

**SUMMONS**

TO THE DEFENDANT:  YOU HAVE BEEN SUED.  THE COURT MAY DECIDE AGAINST YOU
WITHOUT YOUR BEING HEARD UNLESS YOU <u>RESPOND IN WRITING</u> WITHIN 20 DAYS.
READ THE INFORMATION BELOW VERY CAREFULLY.

    A civil complaint or petition has been filed by the plaintiff(s) against you for the relief as set forth in that
document (see complaint or petition).  When service is by publication, add a brief statement of the object of the
action. See Nevada Rules of Civil Procedure, Rule 4(b).
The object of this action is _____

    1.  If you intend to defend this lawsuit, you must do the following within 20 days after service of
        this summons, exclusive of the day of service:
        a.  File with the Clerk of the Court, whose address is shown below, a formal written
            answer to the complaint or petition, along with the appropriate filing fees, in
            accordance with the rules of the Court; and
        b.  Serve a copy of your answer upon the attorney or plaintiff(s) whose name and address
            is shown below.

    2.  Unless you respond, a default will be entered upon application of the plaintiff(s) and this Court may
        enter a judgment against you for the relief demanded in the complaint or petition.

Dated this _____ day of      OCT 19 2009      , 20____.

Issued on behalf of Plaintiff(s):              HOWARD W. CONYERS
                                               CLERK OF THE COURT

Name: Robert R. Hager                          By: **R. Simpson**
Address: 245 E. Liberty St. Ste 110                    Deputy Clerk
         Reno, NV 89501                        Second Judicial District Court
Phone Number: 775-329-5900                     75 Court Street
                                               Reno, Nevada 89501

EXHIBIT ____/____

HSBC 00001

LITTON LOAN LEGAL DEPT Fax:713-966-86          Oct 21 2009 09:09am P005

## AFFIDAVIT OF PERSONAL SERVICE

(To be filled out and signed by the person who served the Defendant or Respondent)

STATE OF _____ )
                                                 )
COUNTY OF _____ )

I, _____, being first duly sworn, depose and say:
(Name of person who completed service)

1. That I am not a party to this action and I am over 18 years of age;

2. That I personally served a copy of the Summons, the Complaint for Divorce, and the
   following documents: _____

   _____

   _____

   upon _____, at the following
   (Name of Defendant or Respondent who was served)

   location: _____

   _____

   on the _____ day of _____, 20____
                              (Month)              (Year)


   _____
   (Signature of person who completed service)

Subscribed and Sworn to before me this

_____ day of _____, 20_____

_____
NOTARY PUBLIC

2

HSBC  00002

LITTON LOAN LEGAL DEPT Fax-713-966-8L          Oct 21 2009 09:09am  P006

**SECOND JUDICIAL DISTRICT COURT**
**COUNTY OF WASHOE, STATE OF NEVADA**

**AFFIRMATION**
**Pursuant to NRS 239B.030**

The undersigned does hereby affirm that the preceding document. _____

**SUMMONS**
(Title of Document)

filed in case number: _____

[✓]  Document does not contain the social security number of any person

-OR-

[ ]  Document contains the social security number of a person as required by

[ ]  A specific state or federal law, to wit

_____
(State specific state or federal law)

-or-

[ ]  For the administration of a public program

-or-

[ ]  For an application for a federal or state grant

-or-

[ ]  Confidential Family Court Information Sheet
(NRS 125.130, NRS 125.230 and NRS 125B.055)

Date: _____

_____
(Signature)

_____
(Print Name)

_____
(Attorney for)

Affirmation
Revised December 15 2006

HSBC  00003

LITTON LOAN LEGAL DEPT Fax:713-966-8L          Oct 21 2009 09:09am  P007

CODE 4085

IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA
IN AND FOR THE COUNTY OF WASHOE

TIMOTHY BURKE, et al
_____
        Plaintiff(s).

vs.

LITTON LOAN SERVICING, LP          Case No. CV09-03134
_____
        Defendant(s).                Dept. No. _____

_____

## SUMMONS

TO THE DEFENDANT:  YOU HAVE BEEN SUED.  THE COURT MAY DECIDE AGAINST YOU
WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND IN WRITING WITHIN 20 DAYS.
READ THE INFORMATION BELOW VERY CAREFULLY.

A civil complaint or petition has been filed by the plaintiff(s) against you for the relief as set forth in that
document (see complaint or petition).  When service is by publication, add a brief statement of the object of the
action. See Nevada Rules of Civil Procedure, Rule 4(b).
The object of this action is: _____

1.  If you intend to defend this lawsuit, you must do the following within 20 days after service of
    this summons, exclusive of the day of service.
    a.  File with the Clerk of the Court, whose address is shown below, a formal written
        answer to the complaint or petition, along with the appropriate filing fees, in
        accordance with the rules of the Court; and
    b.  Serve a copy of your answer upon the attorney or plaintiff(s) whose name and address
        is shown below.

2.  Unless you respond, a default will be entered upon application of the plaintiff(s) and this Court may
    enter a judgment against you for the relief demanded in the complaint or petition.

Dated this _____ day of OCT 2 9 2009, 20___

Issued on behalf of Plaintiff(s):

                                        HOWARD W. CONYERS
                                        CLERK OF THE COURT
Name:  Robert R. Hager                  R. Simpson
Address: _____        By. _____
_____                        Deputy Clerk
Phone Number: 775-329-5491              Second Judicial District Court
                                        75 Court Street
                                        Reno, Nevada 89501

HSBC 00004

LITTON LOAN LEGAL DEPT Fax:713 966 86          Oct 21 2009 09:09am P008

## AFFIDAVIT OF PERSONAL SERVICE
(To be filled out and signed by the person who served the Defendant or Respondent)

STATE OF _____ )
                            )
COUNTY OF _____ )

I, _____, being first duly sworn, depose and say:
(Name of person who completed service)

1   That I am not a party to this action and I am over 18 years of age;

2   That I personally served a copy of the Summons, the Complaint for Divorce, and the

following documents: _____

_____

_____

upon _____, at the following
(Name of Defendant or Respondent who was served)

location: _____

_____

on the _____ day of _____, 20 ____
(Month)            (Year)


_____
(Signature of person who completed service)

Subscribed and Sworn to before me this

_____ day of _____, 20 ____.

_____
NOTARY PUBLIC

2

HSBC 00005

LITTON LOAN LEGAL DEPT Fax:713-966-88          Oct 21 2009 09:09am  P009

1
2
            **SECOND JUDICIAL DISTRICT COURT**
        **COUNTY OF WASHOE, STATE OF NEVADA**
3
                  **AFFIRMATION**
4
           **Pursuant to NRS 239B.030**

The undersigned does hereby affirm that the preceding document: _____

5

6

7
                  **SUMMONS**
8
            (Title of Document)
9
filed in case number: _____

10
11
[✓]  Document does not contain the social security number of any person
12
                  -OR-
13
[ ]  Document contains the social security number of a person as required by
14
   [ ]  A specific state or federal law, to wit:
15
16
         (State specific state or federal law)
17
               -or-
18
   [ ]  For the administration of a public program
19
               -or-
20
   [ ]  For an application for a federal or state grant
21
               -or-
22
   [ ]  Confidential Family Court Information Sheet
      (NRS 125.130, NRS 125.230 and NRS 125B.055)
23

24
Date: _____

25
                    (Signature)
26
27
                    (Print Name)
26
                    (Attorney for)

Affirmation
Revised December 15, 2006

HSBC 00006

LITTON LOAN LEGAL DEPT Fax:713-966-88      Oct 21 2009 09:09am P010

F I L E D
Electronically
10-16-2009 05:46:16 PM
Howard W. Conyers
Clerk of the Court
Transaction # 1104787

1  Robert R. Hager, NV State Bar No. 1482
   Treva J. Hearne, NV State Bar No. 4450
2  HAGER & HEARNE
   245 E. Liberty - Suite 110
3  Reno, Nevada 89501
   Tel: (775) 329-5811
4  Fax: (775) 329-5819
   Email: rhager@hagerhearnelaw.com
5        thearne@hagerhearnelaw.com
        parrlawoffices@sbcglobal.net
6  Counsel for Plaintiffs

7

8         SECOND JUDICIAL DISTRICT COURT
           WASHOE COUNTY, NEVADA

9

10  TIMOTHY BURKE, DAWN BURKE     Case No:
    RUSSELL L. SMITH , and
11  SHIRLEY HOPE SMITH        COMPLAINT

12        Plaintiffs,

13  vs.             1.  Wrongful Foreclosure

14  HSBC BANK, USA, NATIONAL     2.  Fraud in the Inducement
    ASSOCIATION, QUALITY LOAN
15  SERVICE CORP., LITTON LOAN    3.  Conspiracy to Commit Fraud By
    SERVICING, LP, MORTGAGE ELECTRONIC     Creation, Operation and Use of the
16  REGISTRATION SYSTEMS, INC.       MERS System
    FIRST CENTENNIAL TITLE, CARRINGTON
17  MORTGAGE SERVICE, LLC, and     4.  Conspiracy to Commit  Wrongful
    DOES 1 – 10 and Corporations A – Z;      Foreclosure By Creation,
18                   Operation and Use of the MERS
      Defendants.          System
19
                  5.  Unjust Enrichment
20
                  6.  Relief requested: Injunctive,
21                   reformation, declaratory, and
22                   quiet title

23

24      COMES NOW, Plaintiffs, TIMOTHY BURKE, DAWN BURKE, RUSSELL L.

25  SMITH, and SHIRLEY HOPE SMITH, by and through their attorney of record, HAGER

    & HEARNE, and file their Complaint, as follows:

HSBC 00007

LITTON LOAN LEGAL DEPT Fax.713-966-86        Oct 21 2009 09:09am  P011

## STATEMENT OF THE CASE

1    This case arises because the Plaintiffs were the victims of unlawful and wrongful

2 foreclosures and/or an underlying conspiracy to commit fraud that resulted in

3 foreclosures being initiated by the Defendants on the Plaintiff's homes. These

4 foreclosures were, and are, based upon a deed of trust and a note in each mortgage that

5 are no longer held by the same entity or party and are based upon deeds of trust that were

6 flawed at the date of origination of the loans because the Mortgage Electronic Registration

7 Service (MERS) was named as the beneficiary or nominee of the lender on the deeds of

8 trust and because the naming of MERS as the beneficiary was done for the purpose of

9 harming the borrower. MERS was never intended to be the lender and now the servicers

10 Litton Loan and Carrington Mortgage Service, LLC or some party has declared the

11 default on these loans even though the true beneficiaries have not declared a default and

12 have no further interest in the notes and, finally, the obligations reflected by the notes

13 executed by Plaintiffs allegedly secured by the MERS deeds of trust have been satisfied

14 because the investors who furnished the funding for these loans has been paid to the

15 degree that extinguishment of the debt has occurred with the result that there exists no

16 obligation on which to base any foreclosure on the properties owned by the Plaintiffs.

17 Defendants have attempted to foreclose upon the properties of the Plaintiffs when they do

18 not have a lawful right to foreclose and have, at most, an unsecured debt.

## PARTIES

1.    The Plaintiffs Timothy Burke and Dawn Burke are at imminent risk of losing

their home because Defendants, Litton Loan Servicing LP, Quality Loan Service Corp.,

Mortgage Electronic Registration Systems Inc. have served upon Plaintiffs a Notice of

Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

-2-

HSBC 00008

LITTON LOAN LEGAL DEPT Fax:713-966-89          Oct 21 2009 09:10am  P012

1  and have now sold the property to HSBC Bank USA, NA, as Trustee, which property is

2  held as an REO. Further HSBC Bank has filed an ejectment action against the Plaintiffs

3  Burke.

4          2.      The Plaintiffs Russell L. Smith and Shirley Hope Smith are at imminent risk

5  of losing their home because Carrington Mortgage Service, LLC has served upon Plaintiffs

6  a notice of default and intent to begin foreclosure on the Plaintiffs' property.

7          3.      Plaintiffs  Timothy Burke and Dawn Burke are residents of the County of

8  Washoe, and Plaintiffs maintained Plaintiffs' primary residence at all times relevant and

9  material to the claims in this case with the legal description of:

10         PARCEL 1:

11

12         PARCEL 4 OF PARCEL MAP NO. 1041 FOR FRANK P. CAVATAIO JR.,
           ACCORDING TO THE MAP THEREOF, FILED IN THE OFFICE OF THE
13         COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON
           FEBRUARY 7, 1980, AS FILE NO. 656170, OFFICIAL RECORDS
14

15         PARCEL 2:

16         A NON EXCLUSIVE EASEMENT FOR ROADWAY AND UTILITIES OVER
           THOSE PORTIONS OF PARCEL 1, 2, AND 3, LYING WITHIN "CAVATAIO
17         CIRCLE" AS SHOWN ON PARCEL MAP 1041, FOR FRANK P. CAVATAIO,
           JR., ACCORDING TO THE MAP THEREOF, FILED IN THE OFFICE OF
18         THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA,
           ON FEBRUARY 7, 1980, AS FILE NO. 656170, OFFICIAL RECORDS
19

20         APN: 05030219

21  Plaintiffs' real property as described above is commonly referred to and located at

22  4695 Cavataio Circle, Reno, NV  89704 .

23         4.      Plaintiffs Russell L. Smith and Shirley Hope Smith are residents of the County

24  of Washoe, and Plaintiffs maintains Plaintiffs' primary residence at all times relevant and

25  material to the claims in this case with the legal description of:

                                             -3-

HAGER & HEARNE
245 E. Liberty St., Ste. 110
Reno, NV 89501
(775) 329-5800 FAX (775) 329-5819

HSBC  00009

LITTON LOAN LEGAL DEPT Fax:713-966-88.          Oct 21 2009 09.10am P013

1    Lot 25F, in Block F of SADDLEHORN SUBDIVISION UNIT 2, according to the
     Map thereof, filed in the office of the County Recorder of Washoe County,
2    State of Nevada, on April 20, 1990, under File No. 1394539, Official Records.
3    APN: 150-141-16
     Order Number 00149270-KM
4

5    Plaintiffs' real property as described above is commonly referred to and located at
6    14255 W. Windriver Lane, Reno, NV 89511
7        3.      Defendant CARRINGTON MORTGAGE SERVICES, LLC, is registered to do
8    business in the State of Nevada and has notified the Plaintiffs that it will commence
9    foreclosure in the State of Nevada against their property located in the County of Washoe.
10
11       4.      Defendant MERSCORP, INC. was a Delaware corporation doing business in
12   the State of Nevada through its division or subsidiary, Defendant MERS, Inc., a Delaware
13   corporation. Upon information and belief, MERSCORP, INC., was a director of MERS,
14   INC. Defendants MERSCORP, INC., and MERS, Inc. are hereinafter collectively referred
15   to as "MERS."
16       5.      Defendant LITTON LOAN SERVICING, LP, is a foreign corporation doing
17   business in the State of Nevada and has foreclosed on the Burke property without right.
18       6.      Defendant HSBC BANK, NA, as Trustee, is not registered to do business in
19   the State of Nevada and holds the Burke property as an REO. HSBC Bank has filed papers
20   to have the Plaintiffs evicted from their home.
21                       GENERAL ALLEGATIONS
22       7.      In the United States, home purchases are typically financed by mortgages or
23   loans that are secured by a deed of trust and a note which, when executed on behalf of the
24   same entity and held by the same entity as a "note and deed of trust", entitle the holder of
25

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

-4-

HSBC  00010

the note and deed of trust to foreclose on the property of the borrower if the borrower is in
default without legal excuse or recourse.

8.    A reported 3 million foreclosures occurred in the U.S. in 2008.  Foreclosures
to date during calendar year 2009 are at a higher rate than that which occurred during
2008, with 1 in 16 homes in the State of Nevada going into foreclosure during the first six
months of 2009.

9.    From 2003 through 2008, the Defendants entered into mortgages with
deeds of trust and notes that were separated after the execution of the mortgage, the note
was sold to an investor who literally and actually provided the funds for the loan given to
the borrower. Prior to or immediately after the contract was signed by the borrower, the
note was funded by a party other than the originator or servicer of the loan.

10.    The Deed of Trust named a party as the "lender" who did not fund the
mortgage and had no intention of funding the mortgage; yet, that "lender" who had no
beneficial interest named MERS as the beneficiary and MERS had no beneficial interest
nor did MERS represent any party to the deed of trust who had a beneficial interest.

11.    Plaintiffs executed a note and separately a deed of trust (See, Exhibit "1")
naming MERS as the beneficiary and/or nominee of the beneficiary/lender, and that note
was separated from the deed of trust after the execution by Plaintiffs of those documents,
with the note being transferred to investors whose money had funded the loan taken out
by the Plaintiffs/borrowers.  Plaintiffs believe that neither Litton Loans nor Carrington
Mortgage Services, LLC furnished any of the funding for the loans but were merely
transfer agents for money from the investors to loans taken by the Plaintiffs.

12.    Simultaneously with or immediately after the loan was taken out by the
Plaintiffs, the obligations reflected by the notes were satisfied by monies provided by the

-5-

HAGER & HEARNE
245 E. Liberty St. Ste 110
Reno, NV 89501
(775) 329-5800; FAX (775) 329-5819

HSBC 00011

LITTON LOAN LEGAL DEPT Fax:713-966-88.          Oct 21 2009 09:10am P015

1  investors who then obtained ownership of and right to payments under the terms of the

2  notes. These investors are the only parties to whom any obligation arose after the loans

3  were securitized, and are the only proper parties to later declare a default and to have a

4  right to direct a sale if the Plaintiffs did not make payments as required under the terms of

5  the notes.

6       13.    The note that had been executed with the deed of trust by the Plaintiffs were

7  separated from the deed of trust in that the note became part of a pool of mortgages and

8  lost its individual identity as a note between a lender and borrower, but instead merged

9  with the other notes as a total obligation due to the investor.

10      14.    The Mortgage Electronic Registration Service was created by the Defendants

11  identified herein as co-conspirators in relation to the MERS system with the specific

12  intent that MERS would be named the beneficiary and/or as the nominee of the lender on

13  the deed of trust which Plaintiffs were induced into signing. However, MERS was not a

14  nominee for the lender, because the lender was an investor who had provided the funds

15  for the loan. This fact was known to MERS and the purported lender and the subsequent

16  assignee of any and all rights purported to have been assigned by MERS at the time the

17  note and deed of trust was signed by the Plaintiffs and at the time of each and every such

18  later purported assignment by MERS of any interest in the note and deed of trust.

19      15.    The foreclosures complained of herein were initiated against Plaintiffs by

20  parties who have and had no standing to commence or maintain any foreclosure

21  proceedings, both by the express language of the deeds of trust which required that the

22  beneficiary/party who was owed the obligation declare the default and direct the sale, and

23  by the laws governing the commencement and advancement of foreclosure proceedings

24  which require the true beneficiary to declare such default and direct such sale. Quality

25

HAGER & HEARNE
245 E Liberty St, Ste 110
Reno, NV 89501
(775) 329-5811 FAX (775) 329-5819

HSBC 00012

LITTON LOAN LEGAL DEPT Fax:713-966-88.          Oct 21 2009 09:10am P016

1   Loan Services, Carrington Mortgage Services, LLC, HSBC Bank, NA, and the investors

2   that funded this loan were strangers to the purported loan transactions and which parties

3   were and are unknown to Plaintiffs and, neither Litton Loan nor Carrington Mortgage

4   Services funded the Plaintiffs' loans with any of its own assets and are not owed any of

5   the funds to be repaid by Plaintiffs, and do not stand to suffer any loss should they be

6   enjoined from foreclosing on the Plaintiffs' homes.

7        16.    The foreclosure on Plaintiffs' home complained of herein was initiated by

8   Defendants who had and have no lawful right to initiate, advance or maintain any

9   foreclosure action against the Plaintiffs' home.

10       17.    All Defendants knew or should have known that prior to the time that the

11  loans were taken out by the Plaintiffs which are at issue herein, the loans which named

12  MERS on the deed of trust were securitized or intended to be securitized prior to the

13  preparation of the notes and deeds of trust reflecting each such loan. Defendants also

14  knew or should have known that the scheme employed by all Defendants involved in the

15  origination, aggregation and securitization of mortgage-backed loans originated from

16  2003 through 2008 and secured by real property in the United States originated from

17  2003 through 2008 included financial incentives which were designed to result in the

18  loans being written on terms which were likely or certain to result in foreclosure, and that

19  the scheme described herein included financial incentives designed to motivate

20  appraisers, mortgage brokers, lenders, aggregator banks and securitizing banks to steer

21  borrowers into loans they could not afford and could not repay so that the loans would go

22  into default and the Defendants involved in servicing, aggregating and securitizing those

23  loans could make yet more profits from default, foreclosure and selling the properties

24  after foreclosure.

25

HAGER & HEARNE
445 E. Liberty St. Ste 110
Reno NV 89501
(775) 329-5800  FAX (775) 329-5819

-7-

HSBC  00013

LITTON LOAN LEGAL DEPT Fax:713-966-8L          Oct 21 2009 09.10am P017

18.    The financial incentives mentioned in the previous paragraph included without limitation the hiring  of appraisers who had financial incentive to appraise properties at a value that would justify the loan requested, the payment to mortgage brokers of higher fees for sub-prime and sub-sub-prime loans than for prime loans and the use of novel and unprecedented underwriting criteria such as stated income and 100% or more financing of the purchase price, and the purchase of loans from lenders by aggregators and servicers of loans at more than face value if the loans were sub-prime or sub-sub-prime and in particular if such loans also included an adjustable interest rate and/or a pre-payment penalty.  In the case of Plaintiffs, the loan was advanced based upon stated income, but that income was not stated by the Plaintiffs.  Also, in this case, it appears that the equity in the homes was used to secure a larger loan based upon the value of the home when it was exaggerated by the market manipulated by the Defendants.

19.    All Defendants who originated, serviced, aggregated and/or securitized the Plaintiffs' loans knew or should have known at the time of those actions by Defendants that the financial incentives described in the previous paragraph herein were not disclosed to the investor or to the Plaintiffs/borrowers, and that the Defendants who originated, serviced, aggregated and/or securitized the Plaintiffs' loans also purchased credit default swaps which were essentially bets that the Plaintiffs' loans would fail, resulting in multiple payments to those Defendants of the face amount of the loans, and knew or should have known that fact was also concealed from the investors and Plaintiffs who were instead intentionally misled by Defendants to believe that the Plaintiffs qualified for the loans under residential loan underwriting standards used in the industry.

20.    All Defendants who originated, serviced, aggregated and/or securitized the Plaintiffs' loan knew or should have known at the time of those actions by Defendants that

-8

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HSBC 00014

1  the more likely or certain the loan was to fail, the more likely that failure was to cause the

2  entire mortgage-backed security pool, which included Plaintiffs' loans, to fail, the more

3  profitable those events would be to Defendants.

4        21.       Under the securities and federal banking laws, rules and regulations, the

5  investors and the borrowers were entitled to information regarding all of the profits,

6  payments, kick-backs, fees and insurance and credit default swaps related to the

7  transaction which included the investors providing the funds loaned to the borrower, and

8  the concealment of those facts by all the Defendants who originated, serviced, aggregated

9  and/or securitized the Plaintiffs' loan was an intentional misrepresentation and/or

10 intentional material omission of fact by those Defendants for the purpose of using the

11 Plaintiffs/borrowers' signatures on a note and deed of trust to defraud the investors, the

12 borrowers, the insurers of loans, the issuers of credit default swaps and eventually the

13 government whom these Defendants, upon information and belief, falsely told the FDIC

14 or the federal government or the federal reserve that the Defendants were in dire need of

15 trillions of dollars in federal funds due to "toxic assets" being allegedly on the books of

16 Defendants.

17       22.       All Defendants participated in a conspiracy to cause Plaintiffs to enter into

18 instruments that would result in the foreclosure on their homes and to initiate

19 foreclosures on Plaintiffs' homes without the lawful right to do so or to commence and

20 advance foreclosure against Plaintiffs with knowledge that the Plaintiffs had been

21 deceived by having not been informed that the loans they took out were intended to result

22 in foreclosures and consequently more profits to the Defendants.  As a proximate and

23 direct result, Defendants, Carrinton Mortgage Services, LLC, Litton Loans, and HSBC

24 Bank, NA have been unjustly enriched by the payments of the Plaintiffs on the note and by

25

-9-

HAGER & HEARNE
245 E. Liberty St, Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HSBC 00015

1  the profits earned by Defendants from the declarations of default, the commencement and

2  advancement of foreclosures on the Plaintiffs' properties.

3      23.    The lenders and investors in mortgage-backed securities, including some of

4  the Defendants, have obtained bailout money from the United States Treasury and the

5  Federal Reserve in the amount of trillions of dollars for the stated purpose of

6  compensating the lenders and investors for losses sustained due to the alleged default in

7  on residential mortgage loans including those of Plaintiff.

8      24.    The servicers and investors in mortgage backed securities, including the

9  Defendants, have used those funds to repay investors who funded Plaintiffs' loan and/or

10  to settle the lawsuits of those investors against the securitizing banks for fraud, including

11  the Defendants, Carrington Mortgage Services, LLC, Litton Loans and HSBC Bank, NA.

12  and Corporations A - D, with such use of those funds having extinguished the obligations

13  reflected by the notes that were executed by the Plaintiffs, and thus have no right to collect

14  on the notes, and no right to initiate foreclosures on Plaintiffs' homes.

15

16      25.    The Plaintiffs have deeds of trust that state that the beneficiary and/or

17  beneficiary as the nominee of the lender is MERS, and the Plaintiffs have been declared in

18  default by parties not entitled to declare the default. When the Borrowers/Plaintiffs did

19  not pay the payments agreed in the "Notes," unknown parties caused a trustee to notice

20  the obligor of the default and intent to sell under Nevada law.

21      26.    MERS does not have standing merely because it is the alleged beneficiary

22  under the Deed of Trust. It is not a beneficiary and was not a nominee of a beneficiary

23  under the notes, and, in any event, the mere fact that an entity is a named beneficiary of a

24  Deed of Trust is insufficient to enforce the obligation. Since the Deed of Trust attempts to

25

-10-

LITTON LOAN LEGAL DEPT Fax:713-966-88.              Oct 21 2009 09:11aa  P020

1   name MERS as both a beneficiary and a nominee, MNERS is not a true beneficiary with

2   the rights to foreclose.  The Deed of Trust states as follows:

3       "MERS is a separate corporation that is acting solely as a nominee for Lender and

4   Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument.

5   And later is says this:  The beneficiary of this Security Instrument is MERS (solely as

6   nominee for Lender and Lenders successors and assigns) and the successors and assigns

7   of MERS."   However, the terms and conditions given to the members of MERS, i.e. the

8   servicers or "lenders," in the case of the Burke and Russell loans, Fremont Investment and

9   Loan was the named "lender," contradicted the beneficiary status, "MERS Terms and

10   Conditions:"  MERS shall serve as mortgagee of record with respect to all such mortgage

11   loan solely as a nominee, in an administrative capacity, for the beneficial owner or owners

12   thereof from time to time.  MERS shall have no rights whatsoever to any payments made

13   on account of such mortgage loans, to any servicing rights related to such mortgage loans,

14   or to any mortgaged properties securing such mortgage loans.  MERS agrees not to assert

15   any rights (other than rights specified in the Governing Documents) with respect to such

16   mortgage loans or mortgaged properties.  References herein to "mortgage(s)" and

17   "mortgagee of record" shall include deed(s) of trust and beneficiary under a Deed of Trust

18   and any other form of security instrument under applicable State law."  (as found on the

19   MERS website)

20       27.   Defendants' use of MERS created the method to defraud the Home

21   Purchasers, the Plaintiffs herein, because MERS was not the holder of the Note and MERS

22   was not a transferee in possession who was entitled to the rights of a holder or had

23   authority under State law to act for the holder.

- 1 -

HAGER & HEARNE
245 E. Liberty St., Ste. 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HSBC 00017

28.     The entities that are giving notice that they will foreclose on the homes of the Plaintiffs are not MERS and are not the Trustee named on the Deed of Trust and are not the parties that funded the loan of the Plaintiffs.

29.     The Washoe County Recorder of Deeds does not contain any documents assigning or appointing any substitute trustee nor substitute beneficiary on the deeds of trust other than by MERS who was not a true beneficiary.

30.     On February 20, 2004, the Burkes executed a note and deed of trust with Fremont Investment and Loan listed as the "lender." MERS listed as the beneficiary and First American as the Trustee for $518, 750.00.

31.     The Defendant Litton Loans has refused to modify the loan to the current market value even though Defendants had participated in the acts that caused the loss of value of the home or to accept back payments which were offered by the Plaintiffs Burke for payment on the loan.

32.     On March 5, 2009, Quality Loan Service Corp. sent a Notice of Default to the Plaintiffs. Quality Loan Service Corp. is not a contracting party with the Burkes when the note and Deed of Trust was executed.

33.     Quality Loan Service further notified the Plaintiffs that their home would be sold on July 1, 2009.

34.     The home where the Burkes live which was subject to this note was sold on or about July 1 or July 9, 2009.

35.     The property was allegedly purchased by HSBC Bank USA, National Association as Trustee, under the Pooling and Servicing Agreement dated May 1, 2004, Fremont Home Loan Trust 2004-B, Asset Backed Certificates, Series 2004-B.

-12

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HSBC 00018

LITTON LOAN LEGAL DEPT Fax:713-966-88          Oct 21 2009 09:11am  P022

36.     MERS did not contact Burkes nor notify the Burkes that it was no longer the beneficiary under the deed of trust on their property.

37.     MERS did not contact Burkes nor notify the Burkes that it was no longer the beneficiary under the deed of trust on their property.

38.     The Smiths executed a note and deed of trust (Attached as Exhibit 2) to Fremont Investment and Loan on February 13, 2006, for their property at 14255 Windriver Lane, Reno, Nevada 89511 in the amount of $360,000.00.

39.     The Defendant Carrington Mortgage Services, LLC has refused to modify the loan to the current market value even though Defendants had participated in the acts that caused the loss of value of the home.

40.     On October 7, 2009, Carrington Mortgage Services, LLC sent a Notice of Intent to Foreclose to the Smiths.

41.     MERS did not contact the Smiths nor notify the Smiths that it was no longer the beneficiary under the deed of trust on their property.

42.     The deed of trust expressly reserves the right to the Lender to cause the Trustee to execute written notice of the occurrence of an event of default and of Lenders election to cause the Property to be sold. The deed of trust further provides that the Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law.

43.     Defendants knew that the business practices in which they were engaged would result in driving the market for housing into unnaturally high demand which would cause the prices on homes to escalate beyond their normal value. Defendants further knew that lending money to persons who were not qualified in such large numbers would cause the market to eventually crash. The Defendants believed this to the extent that the

-13-

HSBC 00019

LITTON LOAN LEGAL DEPT Fax:713-966-88          Oct 21 2009 09:11am P023

1    Defendants Carrington Mortgage Services, LLC or Litton Loans or their successor in

2    interest or Corporations A – Z purchased credit default swaps, in essence, side bets that

3    bet that the Plaintiffs' and other loans given in the same time frame and under the same

4    circumstances would fail.

                              **FIRST CLAIM FOR RELIEF**

6                                **(Wrongful Foreclosure)**

7        44.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully

8    set forth in this claim.

9        45.    An assignment of an obligation under a mortgage, the note, operates as an

10   assignment of the mortgage.

11       46.    The assignment of the obligations or notes of the Plaintiffs to the investors

12   by way of mortgage-backed securities wherein a co-mingling of the notes occurred,

13   transferred the deed of trust to the investors in that mortgage-backed security and no

14   interest in the note or deed of trust was retained by the "lender Fremont" / servicers

15   Carrington and Litton Loans or by MERS as beneficiary or nominee of the lenders nor was

16   any interest retained by the servicers Carrington and Litton Loans, who have called for

17   the defaults on the Plaintiffs' properties in order to initiate foreclosures against the

18   Plaintiffs' home.

19       47.    The obligations of the Plaintiffs on which the Defendants Carrington

20   (Smiths) and Litton Loan (Burkes), with the assistance of Quality Loan Services

21   Corporation (Burkes), have declared a default which was discharged when the investors in

22   the mortgage-backed securities claims were paid as a result of over-collateralization of the

23   obligations and/or credit default swaps and/or federal bailout funds and other monies

24   paid to the investors who owned the note of the Plaintiffs co-mingled with the other notes

25

                                        -14-

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HSBC 00020

LITTON LOAN LEGAL DEPT Fax:713-966-88.        Oct 21 2009 09:11am P024

1    and obligations and/or to the Defendants or bank holding companies who disbursed the

2    monies in such fashion as to extinguish the obligation of Plaintiffs to repay the monies

3    that they borrowed which are at issue herein.

4        48.    Neither the investors in the mortgage backed securities nor any other entity

5    or person who had a right to payment from the borrowers or who was a lawful beneficiary

6    under the deeds of trust ever declared a default of the notes executed by Plaintiffs and no

7    true beneficiary with a beneficial interest under the deed of trust ever declared a default

8    under the notes and deeds of trust and no proper beneficiary under the deeds of trust ever

9    directed a sale of the property owned by Plaintiffs in which MERS is named as beneficiary

10   or nominee of the beneficiary/lender at issue in this action.

11       49.    Carrington (Smiths) and Litton Loan (Burkes), the servicers of the notes.

12   have no investment in the mortgage-backed securities as investors, no beneficial interest

13   in the note or deed of trust of the Plaintiffs and no right to declare a default on the note

14   and the allegations by Carrington and by Litton Loan through Quality Loan Services in the

15   notices of default and election to sell the Plaintiffs' properties to the effect that "the

16   beneficiaries have declared defaults and directed that the properties be sold" is not true.

17   and the Defendants Carrington and Litton Loan who have made that false representation

18   knew at the time such notices were executed, mailed and recorded that these allegations

19   were false.

20       50.    Foreclosures against the properties of the Plaintiffs cannot commence

21   without a written declaration of default for each property and direction to the trustee to

22   sell the property for each property made by the persons or entities to which the

23   obligations under the notes are owed.

-15-

HAGGET & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800; FAX (775) 329-5819

HSBC  00021

LITTON LOAN LEGAL DEPT Fax:713-966-88        Oct 21 2009 09:11am   P025

51.    After the debts or some of the debts on the notes were discharged to the investors, the assignments of the deeds of trust and notes, the designations of substitute trustees and substitute beneficiaries, the declarations of default and directions to sell the properties, the notices of default and election to sell and the notices of sale were nullities and transferred nothing and, in particular, no rights to foreclose, in favor of Carrington or Litton Loan or Quality Loan Services Corp.

52.    None of the Defendants nor any other person or entity with any legal right to declare a default and direct a sale on any of the Plaintiffs' notes and/or deeds of trust naming MERS as beneficiary or nominee of the beneficiary/lender ever declared a default and directed a sale of any such property of Plaintiffs herein.

53.    As a direct and proximate result of the unlawful and wrongful commencement and advancement of foreclosure proceedings by Defendants complained of herein, the Plaintiffs who have been subjected to such actions by Defendants have suffered damages including without limitation economic damages, severe and disabling psychological and physical pain and suffering, humiliation, embarrassment, damage to credit and other damages as alleged herein.

54.    Plaintiffs have been required to retain counsel and expend costs to prosecute this claim for relief.

SECOND CLAIM FOR RELIEF

(Fraud in the Inducement)

55.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully set forth in this claim.

56.    Defendants Litton Loans and Carrington, through their agents and predecessor (Fremont Investment & Loan), and successors in interest failed to disclose

-16-

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329 5800, FAX (775) 329-5819

HSBC 00022

LITTON LOAN LEGAL DEPT Fax:713-966-88.        Oct 21 2009 09:12am P026

1    the material terms of the loans and incidental services to Plaintiffs at the execution of the

2    closing papers. Carrington and Litton Loans further failed to explain the fact that

3    Plaintiffs and others similarly situated persons entering into similar loans by the millions

4    across this country were not qualified to enter the loans on the terms stated, failed to

5    advise the Plaintiffs that the Plaintiffs as well as the other persons as borrowers were

6    involved in a scheme to defraud investors who invested in funding loans that were more

7    than likely to fail and cause a catastrophic drop in real estate values.

8        57.    Defendants Carrington, Litton Loan, Quality Loan Services, MERS and

9    Corporations A – D failed to advise the Plaintiffs that the obligations on their notes had

10   been discharged in whole or in part, and failed to advise Plaintiffs of the fact that

11   Defendants had no lawful rights to foreclose upon the homes of the Plaintiffs.

12       58.    Defendants concealed the true terms of the loans, and the risks of the

13   transactions, including, but not limited to, negative amortization, prepayment penalty

14   provisions, the risk of default and the risk of foreclosure from Plaintiffs and failed to

15   advise Plaintiffs that the Defendants had no lawful right to foreclose upon their homes

16   and further failed to notify the Plaintiffs that the obligations of the Plaintiffs on the notes

17   had been discharged in whole or in part.

18       59.    Defendants through their agents, predecessors and successors in interest

19   misrepresented the ability of Plaintiffs to qualify for the loans.

20       60.    Defendants knew that, had the truth been disclosed, Plaintiffs would not

21   have entered into the loans and had the truth of the discharges been revealed, the

22   Plaintiffs would not have made payments to the Defendants pursuant to those obligations.

23

24

25

HAGER & HEARNE
245 E. Liberty St., Ste. 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5815

-17-

HSBC  00023

61.    Defendants intended to induce Plaintiffs into reliance upon these representations and failures to disclose both at closing and later in the modification proved the intent of the Defendants.

62.    Defendants failed and refused to advise Plaintiffs that Defendants had not funded the loans and that Plaintiffs owed no payments to Defendants, nor did Defendants inform Plaintiffs that they did not have a lawful right to sell Plaintiffs' home in foreclosure and did not have any right to deprive the Plaintiffs of their home by any means and that, at most, all Defendants would have had to enforce is an unsecured debt on behalf of unknown parties.

63.    But for the failure to disclose the true and material terms of the transactions that began the loans and the failure to disclose that Defendants had no right to foreclose upon the homes of the Plaintiffs, that Plaintiffs would lose their homes, Plaintiffs were not allowed to read the agreements between the Defendants and others to securitize and transfer the Plaintiffs' notes and any additional documents that would have alerted the Plaintiffs to the conspiracy to defraud them and other borrowers and investors by the Defendants. Defendants' intentional misrepresentations, their failure to disclose the material terms of the transaction, and their failure to state that Defendants have no right to collect payments from Plaintiffs or any right to foreclose on their homes, induced Plaintiffs to enter into the loans as alleged herein.

64.    The Defendants knew that they had no lawful right to foreclose on any of the Plaintiffs' homes and that the Defendants had not received any right to collect on the notes without consideration and, thus, were not holders in due course of the notes of the Plaintiffs.

HAGER & HEARNE,
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

-18-

HSBC 00024

65.     As a direct result of the failure to disclose all these matters discussed herein, Defendants have caused Plaintiffs damages, pain and suffering, mental anguish, in addition to requiring that Plaintiffs retain counsel to prosecute these claims.

### THIRD CLAIM FOR RELIEF

### (Conspiracy to Commit Fraud by the Creation, Operation and Use of MERS System)

### (As to Defendants MERSCORP, Inc., MERS, Inc., Indymac, and Corporations A - Z)

66.     Plaintiffs incorporate by this reference and reallege the allegations contained in all the paragraphs above as if set forth fully herein.

67.     Upon information and belief, Defendants MERSCORP, Inc., MERS, Inc., and Carrington and Litton Loan and Corporations A - Z(hereinafter in this Third Claim for Relief collectively referred to for purposes of this Third Claim as the "Defendant conspirators"), and each of them, did knowingly and willfully conspire and agree among themselves to engage in a conspiracy to promote, encourage, facilitate and actively engage in  fraudulent and predatory lending practices perpetrated on Plaintiffs as alleged herein and the actions of the Defendant conspirators were taken as part of the business policies and practices of each Defendant conspirator in participating in the MERS system.

68.     Upon information and belief, the Defendant conspirators are or have been shareholders in MERSCORP, Inc., MERS, Inc. and/or members of the MERS system, and, as to Defendant conspirators, Carrington and Litton and Corporations A – Z have, through their employees and agents, served as members of MERSCORP, Inc. and/or MERS, Inc., and participated in the design and coordination of the MERS system described in this complaint

-19-

HAGEN & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-9800, FAX (775) 329-5819

HSBC 00025

LITTON LOAN LEGAL DEPT Fax:713-966-88.        Oct 21 2009 09:12am P029

69.    Defendants' participation as shareholders, directors, operators, or members of MERSCORP, Inc. and/or MERS, Inc. are as follows:

a.    MERSCORP, Inc. is the operating company that owns and operates the MERS System described herein, and is the parent company of Mortgage Electronic Registration Systems, Inc. ("MERS, Inc.").

b.    Defendants Carrington and Litton and Corporations A – Z are Members of MERS, Inc.

70.    Whenever this Complaint refers to any corporation's act, deed, or transaction, it means that such corporation engaged in the act, deed, or transaction by or through its members, officers, directors, agents, employees, or other representatives while they actively were engaged in the management, direction, control, or transaction of its business or affairs.

71.    Beginning at a time unknown to the Plaintiffs, prior to 2004, and continuing through at least the present, the Defendant co-conspirators engaged in a conspiracy to unlawfully deprive borrower-homeowners of property in numerous states through issuing predatory loans as described herein, and through securitization and subsequent processes described herein.

72.    MERS, Inc. and/or MERSCORP, Inc. arranged for bilateral and multilateral meetings, bilateral and multilateral teleconferences, and bilateral internet communications with potential Shareholders, actual Shareholders, candidates for Membership, and Members.

73.    Upon information and belief, the Defendant conspirators have conspired among themselves and with other unknown parties to:

-26-

HAGER & HEARNE
245 E. Liberty St., Ste. 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HSBC 00026

LITTON LOAN LEGAL DEPT Fax:713-966-88.          Oct 21 2009 09:12am  P030/099

a.      develop a system of earning profits from the origination and
securitization of residential loans without regard for the rights of Plaintiffs,
and others similarly situated, by engaging in predatory and deceptive
residential lending practices as alleged in this complaint above; and

b.      in furtherance of the system referred to immediately above, the
Defendant conspirators intentionally created, managed, operated and
controlled the Defendants MERSCORP, Inc. and MERS, Inc. for the specific
purpose of MERS, Inc. being designated as a sham "beneficiary" in the
original deeds of trust securing those loans, including the loans made to
Plaintiffs and other similarly situated individuals by Fremont Investment &
Loan and Corporations A - Z; and

c.      Defendant conspirators intentionally created, managed, operated and
controlled the MERS system with the unlawful intent and for the unlawful
purpose of making it difficult or impossible for Plaintiffs and other victims
of such industry-wide predatory policies and practices to identify and hold
responsible the persons and entities responsible for the unlawful actions of
Defendant Carrington, Litton, MERS, Inc., and their co-conspirators
because MERS did not track the transfers but relied upon the members to
report the transfers when a foreclosure was initiated.

74.     Upon information and belief, Defendant conspirators, through creation of
the MERS system alleged herein, adopted and implemented residential lending
underwriting guidelines for use in Nevada and in other states which:

a.      were intended to, and did, generate unprecedented profits for the
Defendant conspirators and their co-conspirators at the expense of Plaintiffs

-27-

HSBC  00027

LITTON LOAN LEGAL DEPT Fox:713-966-88:          Oct 21 2009 09:12am P031/099

and other persons who were fraudulently induced by the Defendant conspirators and their co-conspirators into taking out residential loans that were known by the Defendant conspirators and their co-conspirators, at the time the loans were originated, and,

b.      were likely to result in foreclosure on those loans and loss by Plaintiffs and other borrowers of their homes, with reckless disregard and intentional indifference by the Defendant conspirators and their co-conspirators of the likelihood of such foreclosure.

75.    Removing the transfers from the recording process and failure to record a real estate transaction on the public record maintained by the county clerks prevents oversight of real estate transactions by the public and by public officials.

76.    MERSCORP, Inc. informed its co-conspirators that using the MERS system would remove transaction records from the public record.

77.    MERSCORP, Inc. and/or MERS, Inc. have publicly stated the following:

a.      "MERS eliminates the need to prepare and record assignments when trading residential and commercial mortgage loans."

b.      "With the recording of the security instrument(s), MERS becomes the mortgagee in the county land records and no assignments are required during a subsequent sale and transfer of the loan between MERS members."

c.      "There is no dependency on the corporate name you use on closing documents and the corresponding corporate name on the MERS System because the MERS System is not the legal system of record of ownership of mortgage loans."

-22-

HSBC 00028

LITTON LOAN LEGAL DEPT Fax:713-966-86        Oct 21 2009 09:12am P032/099

78.     Upon information and belief, the MERS system was created for the unlawful purpose of hiding and insulating the brokers and originators of predatory toxic loans from accountability and liability by creating an entity which simultaneously informed all lenders who originated loans that named MERS as the beneficiary of the following:

a.      MERS would never own or acquire any actual beneficial interest in any loan in which it was named as beneficiary under the deed of trust, and that

b.      MERS could be named as beneficiary for purposes of public notice and notice to the borrower and would act in that capacity if so designated by the lender who originated the loan.

79.     Upon information and belief, the intent and purpose of the Defendant conspirators and their co-conspirators in the creation, management, operation and control of MERS was, without limitation, to make it impossible for the borrowers, their attorneys, the courts, the government, and anyone other than the Defendant conspirators who created and controlled MERS to identify the actual beneficial owner of any particular loan or the property which was the collateral securing that loan until such time, if any, that foreclosure action was initiated.   As a result, Plaintiffs was deprived of the right to attempt to modify their toxic loans, as the true identity of the actual beneficial owner was intentionally hidden from Plaintiffs and other similarly situated individuals.

80.     MERSCORP, Inc.'s marketing materials also promise Members with assistance with foreclosures.  MERSCORP, Inc. and/or MERS, Inc. have publicly stated: "MERS has assembled a Foreclosure Manual to provide a state-by-state guideline for our Members to follow when foreclosing a mortgage loan in the name of MERS."

-23-

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800; FAX (775) 329-5819

HSBC 00029

LITTON LOAN LEGAL DEPT Fax:713-966-88;                    Oct 21 2009 09:12a» P033/099

81.    Upon information and belief, the Defendant conspirators' actions in creating the MERS system, which was dependent on fraudulent and deceptive practices that included, but were not limited to, making loans to consumers such as Plaintiffs in violation of the Truth in Lending Act, and the Real Estate Settlement Procedures Act and used underwriting guidelines that were wildly divergent from the guidelines that had been used to give loans in this country for decades, created a system to unlawfully deprive Plaintiffs of their interest in their homes.

82.    MERSCORP, Inc. and/or MERS, Inc. offered Members increased profit. MERSCORP, Inc. has publicly stated:

a.    "The MERS web site enables you to target directly your MERS® Ready products and services to MERS members."

b.    "Commercial originators and issuers save hundreds to thousands of dollars (in the case of cross-collateralized loans) in preparing and recording assignments. Where the originator has not recorded a MERS as Original Mortgagee (MOM) security instrument, the issuer saves the costs of assigning to the Trust by having the originator assign to MERS."

c.    "It will reduce risk and generate more profits for lenders because the Notes registered on it will be in electronic format. It shortens the timeframe between the closing and the securitization of the loan, enabling the Note to move instantly, creating faster funding."

83.    MERSCORP, Inc.'s rules and by-laws, to which MERS Members agree, require the following:

BY COMPLETING, SIGNING, AND SUBMITTING THIS APPLICATION, THE APPLICANT IS AGREEING TO BE A MERS MEMBER. THE APPLICANT

-24-

BAUER & HEARNE
245 E Liberty St., Ste. 110
Reno, NV 89501
(775) 329-5900, FAX (775) 329-5510

HSBC 00030

HEREBY AGREES TO PAY ALL FEES AND EXPENSES SET FORTH IN THE

MERS RESIDENTIAL FEE SCHEDULE, WHICH MAY CHANGE FROM TIME TO

TIME; ABIDE BY ALL EXISTING MERS RULES AND PROCEDURES, WHICH

ARE INCORPORATED HEREIN BY REFERENCE AND MAY BE AMENDED

FROM TIME TO TIME; AND COMPLY WITH THE TERMS AND CONDITIONS

SET FORTH IN THE ATTACHED ADDENDUM ENTITLED TERMS AND

CONDITIONS. (Emphasis in original).

84.     The MERSCORP, Inc. rules and by-laws, to which MERS Members agree,

cannot be carried out lawfully because they require the following:

    1. MERS, which shall include MERSCORP, Inc. and Mortgage Electronic

    Registration Systems, Inc., and the Member shall abide by these Terms and

    Conditions, the Rules and Procedures (collectively, the "Governing

    Documents"), copies of which will be supplied upon request. The Governing

    Documents shall be a part of the terms and conditions of every transaction

    that the Member may make or have with MERS or the MERS® System

    either directly or through a third party. The Member shall be bound by any

    amendment to any of the Governing Documents.

    2. The Member, at its own expense, shall promptly, or as soon as

    practicable, cause MERS to appear in the appropriate public records as the

    mortgagee of record with respect to each mortgage loan that the Member

    registers on the MERS® System. MERS shall serve as mortgagee of record

    with respect to all such mortgage loans solely as a nominee, in an

    administrative capacity, for the beneficial owner or owners thereof from

    time to time. MERS shall have no rights whatsoever to any payments made

-25-

HSBC 00031

on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law. . . .

6. MERS and the Member agree that: (i) the MERS® System is not a vehicle for creating or transferring beneficial interests in mortgage loans, (ii) transfers of servicing interests reflected on the MERS® System are subject to the consent of the beneficial owner of the mortgage loans, and (iii) membership in MERS or use of the MERS® System shall not modify or supersede any agreement between or among the Members having interests in mortgage loans registered on the MERS® System."

85. The times, dates, and locations of the various meetings and communications among and between the conspirators are solely within the knowledge of the conspirators and have not been made public by MERS or its co-conspirators.

86. In addition to the allegations made related to the shareholder, director, and creator conspirators, the MERS system conspiracy consisted of:

a. The Lender conspirators who agreed to procure loans by means of violation of state and Federal lending laws, as further described in the previous claims for relief.

b. The Lender, Securitizer and Servicer conspirators who agreed to use the MERS system unlawfully and in violation of state and Federal laws to

-26-

LITTON LOAN LEGAL DEPT Fax:713-966-8810          Oct 21 2009 09:13am P036/099

deceive homeowners and securities purchasers by misleading them to believe that the conspirators had legal authority to foreclose when in fact, the conspirators do not have legal authority to foreclose on loans which were made part of the MERS system, as further described in the previous claims for relief.

c.    The Securitizer conspirators who were aware of these violations of law during procurement and agreed to purchase the loans knowing that the law had been violated.

d.    The Securitizer conspirators who, upon information and belief, packaged and sold loans knowing that such loans were based on deeds of trust that had been split from the notes, and based on loans that had been sold as part of the securitization process before the loans were finalized with the borrowers.  Thereafter, the purported interest in the obligation, the note as evidence of the obligation, and the security interest for the obligation were transferred multiple times without recording the change in ownership of an interest in real property in the appropriate county records.  This was accomplished by the creation of the private parallel record keeping service known as the MERS system, whereby MERS, Inc. is named in the deed of trust which is supposed to be the security for the underlying loan obligation.  MERS is named as the nominee of the lender, but not as the holder of the note or the actual lender.  Rather, MERS is named as beneficiary for the purpose of deceiving the borrower and the clerk's office where the deed of trust is recorded.

-27-

HAGER & HEARNE
245 E. Liberty St., Ste. 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

LITTON LOAN LEGAL DEPT Fax:713-966-86        Oct 21 2009 09:13am P037/099

e.      A securitization process that was based on loans that were made based on residential loan underwriting guidelines that were designed to generate as many loans as possible to fuel the securitization process to feed the demand for mortgage-backed securities, the faulty and toxic nature of which loans was hidden by the MERS system. As a result of MERS being named the beneficiary, and through the processes described herein, the note and deed of trust are "split." When the note is split from the deed of trust, then the note becomes unsecured and a person holding only the note lacks the power to foreclose and a person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it. The monetary effect of utilizing the MERS system, in addition to the allegations set forth otherwise herein, was to hide profits and fees that were not disclosed to the borrower or to the investor in the note, which, in some cases, upon information and belief, were in excess of the principal value stated on the note.

f.      The Securitizer conspirators who violated state and Federal securities laws through their descriptions of the financial derivatives created by the conspiracy.

g.      The Lender conspirators who agreed to supply loans to the Securitizers despite knowledge that the Securitizers would sell them in violation of the law.

h.      The Servicer conspirators who agreed to unlawfully foreclose on loans despite the separation of the loan from the deed of trust which made the foreclosure unlawful because the debt was no longer secured.

-78-

HACHER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HSBC 00034

LITTON LOAN LEGAL DEPT Fax:713-966-88L        Oct 2ͻ 2009 09:13am  P038/099

87.     All of the conspirators agreed to the participation of the other conspirators in their individual roles in the conspiracy. The loan files of each of the loans disclose the legal violations and document that the Lenders agreed to purchase loans from third party originators and to sell them to the Securitizers. The Securitizers agreed to purchase the loans and pool them with full knowledge of the contents of the loan files. The Servicers agreed to foreclose with full knowledge of the loan file for each loan.

88.     All of the conspirators continued to agree to the conspiracy over the course of thousands of transactions.

89.     Defendants Carrington and Litton have acted as servicers in the conspiracy.

90.     Defendants Carrington, Litton, HSBC and Corporations A – Z have acted as Securitizers in the conspiracy.

91.     For the purpose of forming and effectuating this conspiracy, Defendants and co-conspirators did the following things, among others:

        a.      The Defendants acting as Lenders described above systematically and repeatedly violated Federal and state lending laws in order to originate mortgages, as described in the previous claims for relief;

        b.      The Defendants acting as Securitizers knowingly and by agreement serviced the unlawfully obtained mortgages;

        c.      The Defendants acting as Lenders, Securitizers and Servicers utilized and benefited from the MERS system as a means of preventing detection by law enforcement or by the public and as a means of unlawful foreclosure to the detriment of homeowners;

        d.      The Defendants acting as Lenders and Securitizers, with knowledge and agreement of the co-conspirators, utilized the MERS system in such a

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329.5800; FAX (775) 329-5819

-29-

HSBC  00035

LITTON LOAN LEGAL DEPT Fax:713-966-88_          Oct 21 2009 09:13am P039/099

manner as to split the promissory note from the mortgage or deed of trust and thereby destroy the note holders' security, nevertheless proceeding with unlawful foreclosure actions to the detriment of homeowners;

e.      All Defendants named herein as co-conspirators profited from their respective roles in originating loans, selling them, and pooling their MERS registered home loans together in large bundles which were sold and turned into financial derivative instruments;

f.      The mortgage securitization process became known in financial industry parlance as "slicing and dicing." The slicing and dicing results in a pool of mortgages which have lost their individual characteristics but which have a high value to those who create them;

g.      The Defendants acting as Securitizers named herein purchased mortgages from the Defendants acting as Lenders named herein for securitization;

h.      The Defendants named as Securitizers herein sold the securitized and pooled mortgages as asset backed financial derivatives with affirmative claims that Defendants were unaware of any legal issues which would affect the value of the assets backing the securities, which was untrue, as Defendants actually knew or should have known that the mortgages were unlawfully obtained and subject to rescission, and knew or should have known that the mortgages and promissory notes had been split and therefore the note holder no longer had the right to foreclose, assuming that it ever did;

-30-

HAGER & HEARNE
245 E. Liberty St. Ste 110
Reno, NV 89501
(775)329-5800, FAX (775) 329-5819

HSBC 00036

LITTON LOAN LEGAL DEPT Fax:713-966-88.        Oct 21 2009 09:13am P040/099

i.      The Defendants described herein as Servicers unlawfully foreclosed on homeowners' properties. The Servicers misrepresented that they had the legal right to foreclose, when, in fact, they did not. The Servicers' foreclosures illegally deprived homeowners of property;

j.      All Defendants named as MERS members agreed to promote MERS, an ostensibly lawful business, and to utilize MERS in an unlawful manner to deprive Plaintiffs and those similarly situated of property.

92.     The securitization process took distinct loans, deeds of trust, and mortgages, and pooled them together in such a manner that they lost their unique identity. Hundreds of such financial derivative instruments were created by the co-conspirators. The co-conspirators all profited from their respective roles in the process, including, but not limited to, the following pooling agreements. These pooling agreements are examples of the type of pooling agreement utilized by the Defendants Carrington, Litton and Corporations A - Z:

a.      Defendant and co-conspirators Carrington, Litton, HSBC, and Corporations A-Z profited from the conspiracy since approximately 18% of the mortgages in one example loan pool were originated by, for example, Countrywide Home Loans, Inc.

b.      The HSI Asset Loan Obligation Trust 2006-2, was sponsored and sold by HSBC Bank. Countrywide Home Loans, Inc. originated 13% of the loans in this instrument.

c.      The Banc of America Funding 2007-4 Trust was sponsored by co-conspirator Bank of America, N.A. The Master Servicer of this financial derivative instrument is Defendant and co-conspirator Wells Fargo Bank,

-31-

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800; FAX (775) 329-5819

HSBC 00037

LITTON LOAN LEGAL DEPT Fax:713-966-86          Oct 21 2009 09:13am  P041/099

N.A. GMAC Mortgage, L.L.C. is also among the servicers. The originators of
the loans pooled in this instrument include Defendants and co-conspirators
GMAC Mortgage, L.L.C., Countrywide Home Loans, Inc., Wells Fargo Bank.
N.A., Bank of America, N.A., National City Mortgage Co.

    d.    The Banc of America Funding 2007-4 Trust was sponsored by and
co-conspirator Bank of America, N.A. The Master Servicer of this financial
derivative instrument is Defendant and co-conspirator Wells Fargo Bank.
N.A. GMAC Mortgage, L.L.C. is also among the servicers. The originators of
the loans pooled in this instrument include Defendants and co-conspirators
GMAC Mortgage, L.L.C., Countrywide Home Loans, Inc., Wells Fargo Bank,
N.A., Bank of America, N.A., National City Mortgage Co. The Banc of
America Funding 2007-7 Trust hired Defendants and co-conspirators Bank
of America, N.A., CitiMortgage, Inc., GMAC Mortgage, LLC, and National
City Mortgage Co. as servicers.

    e.    Defendant and co-conspirator Wells Fargo Bank. N.A. is the master
servicer of the HSI Asset Loan Obligation Trust 2007-2. 18% of the
mortgages in that loan pool were originated by Defendant Countrywide
Home Loans, Inc. 26% of the mortgages in that pool originated from HSBC
Mortgage Corporation (USA). HSBC Mortgage Corporation (USA) profited
from packaging its loans together with those of Defendant and co-
conspirator Countrywide Home Loans, Inc.

    f.    In the J.P. Morgan Alternative Loan Trust 2007-A2, J.P. Morgan
Chase Bank was an originator of loans which were pooled.  JPMorgan Chase
Bank, National Association is one of the servicers of the mortgage pool.

-32-

HSBC  00038

LITTON LOAN LEGAL DEPT Fax:713-966-86          Oct 21 2009 09:14am  P042/099

1    Wells Fargo Bank, N.A. is the master servicer.  U.S. Bank National

2    Association is the trustee.  Countrywide Home Loans, Inc. sold loans to the

3    trust.  JPMorgan Chase Bank is one of the servicers.

4        93.    Upon information and belief, Plaintiffs' loans were securitized, "sliced and

5    diced" and pooled into mortgage pools such as the ones described herein as part of the

6    conspiracy related to the creation and operation of the MERS system, and Defendants,

7    and each of them, profited from same and are liable for their acts and the acts of their co-

8    conspirators in creating the MERS system, including, but not limited to, the use of MERS-

9    approved and created documents to establish the loans (including, but not limited to, the

10   form of deed of trust), and in participating in the securitization process described herein,

11   thus, involving the Plaintiffs in this fraud upon the investors without their knowledge.

12       94.    Upon information and belief, Defendant conspirators utilized funds received

13   as part of the Troubled Asset Relief Program payouts and payouts from the Federal

14   Reserve or the FDIC to further the conspiracy to defraud Plaintiffs to deprive them of

15   their money, to deprive them of their property and any equity in their property, to

16   unlawfully initiate foreclosure on their home and, by those foreclosures, ruin their credit

17   and credit rating and standing in the community, to pay investors in the mortgage-backed

18   securities which were comprised of the loans made to Plaintiffs and others similarly

19   situated, and to pay bonuses to employees and officers of the Defendant conspirators

20   based on their devising the subprime mortgage-backed products which were securitized

21   by loans of the type issued to Plaintiffs, and collateralizing and selling such products in

22   the United States and abroad.

23       95.    As a result of Defendant conspirators' conspiracy described herein, Plaintiffs

24   have suffered injuries which include mental anguish, emotional distress, embarrassment,

25

-33-

HAGER & HEARNE
243 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX: (775) 329-5819

HSBC  00039

LITTON LOAN LEGAL DEPT Fax:713-966-88.          Oct 21 2009 09:14am  P043/099

1   humiliation, loss of reputation and a decreased credit rating which has, or will, impair

2   Plaintiffs' ability to obtain credit at a more favorable rate than before the decrease in

3   credit rating, the loss or anticipated loss of their Residence and other financial losses

4   according to proof, and Plaintiffs have incurred attorneys' fees and costs in this matter.

5        96.   Defendant conspirators' actions were wanton, willful and reckless, and

6   justify an award of punitive damages against Defendant conspirators, and each of them.

7                   FOURTH CLAIM FOR RELIEF

8   (Conspiracy to Commit Wrongful Foreclosure by the Creation, Operation and

9                    Use of the MERS System.)

10        97.  Plaintiffs incorporate by this reference each and every paragraph of this

11   Complaint as if set forth fully herein.

12        98.  Upon information and belief, Defendants MERSCORP, Inc., MERS, Inc.,

13   Indymac and Corporations A - Z for purposes of this Fourth Claim as the "Defendant

14   conspirators"), and each of them, did knowingly and willfully conspire and agree among

15   themselves to engage in a conspiracy to promote, encourage, facilitate and actively engage

16   in wrongful foreclosures perpetrated on Plaintiffs as alleged herein, specifically in the

17   First Claim for Relief, and the actions of the Defendant conspirators were taken as part of

18   the business policies and practices of each Defendant conspirator in participating in the

19   MERS system.

20        99.  The MERS system was known by Defendant conspirators as being used by the

21   Defendant co-conspirators named in the first, second and third Claims for relief to

22   facilitate the wrongful foreclosures complained of herein.

23        100.  Specifically, the MERS system was designed to remove the need for

24   recordation of transfers of deeds of trust as alleged herein. This component of the design

25

-34-

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HSBC 00040

LITTON LOAN LEGAL DEPT Fax:713-966-88.                    Oct 21 2009 09:14am  P044/099

of the MERS System facilitated the wrongful foreclosures complained of herein by making

it easier to transfer the purported beneficial interest in a deed of trust and to appoint a

trustee for the purpose of foreclosing on a property, despite the fact that the deed of trust

no longer provided security for a note as a result of the note having been separated from

the deed of trust as alleged herein.

     101.  The MERS system does not track the transfer of the note.

     102.  The MERS system does not track the identity of the holder of the note.

     103.  Upon information and belief, the Defendant conspirators are or have been

creators and/or directors of MERSCORP, Inc., MERS, Inc. and/or members of the MERS

system, and, as to Defendant conspirators, and participated in the design and

coordination of the MERS system described in this complaint.

     104.  Defendants' participation as shareholders, directors, operators, or members

of MERSCORP, Inc. and/or MERS, Inc. are as follows:

     a.    MERSCORP, Inc. is the operating company that owns and operates

     the MERS System described herein, and is the parent company of Mortgage

     Electronic Registration Systems, Inc. ("MERS, Inc.").

     b.    Defendants Carrington, Litton, HSBC and Corporations A -Z are

     Members of MERS, Inc.

     105.  Whenever this Complaint refers to any corporation's act, deed, or transaction,

it means that such corporation engaged in the act, deed, or transaction by or through its

members, officers, directors, agents, employees, or other representatives while they

actively were engaged in the creation, management, direction, control, or transaction of

its business or affairs.

-35-

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HSBC 00041

LITTON LOAN LEGAL DEPT Fax:713-966-88          Oct  2: 2009 09:14am  P045/099

FIFTH CLAIM FOR RELIEF

(Unjust Enrichment)

(As to All Defendants)

106.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully set forth in this claim.

107.    Defendants' deceptive scheme as alleged herein unjustly enriched Defendants, and each of them, to the detriment of Plaintiffs, by causing Defendants, and each of them, to receive monetary payments from Plaintiffs and the class members and money to which Defendants were not entitled because the Defendants did not fund the loans of the Plaintiffs.

108.    Specifically, Plaintiffs have been injured in their property and lost their cash and personal investments and right to peaceful enjoyment of their primary residences in a variety of ways, including but not limited to: All borrowers who were targeted for and lured into the mortgages sold by Defendants were kept from knowing the true purpose of the securitization and the use of the funds of the investors.  This constituted a misrepresentation that caused Plaintiffs to make their monthly payments from the cash that represented the equity in their home to the Defendants.  Moreover, upon information and belief, the variety of additional and separate payments charged for services and other items tangential to the loan were prohibitive.  The result is that Plaintiffs assumed financial burdens that they would not otherwise have assumed, and paid Defendants funds to which the Defendants were not entitled nor owed.

109.    The loan made to Plaintiffs were then repackaged, reassigned, and/or resold, each with a margin of profit for the assignee/buyer that would not otherwise have existed had Plaintiffs not been deceived by the original terms of the loan and/or the lack

-36

HSBC 00042

LITTON LOAN LEGAL DEPT Fax:713-966-86          Oct 21 2009 09:14am P046/099

of disclosures as alleged herein.  Likewise, Plaintiffs would not have continued to make

payments on the loans if the Defendants had properly disclosed the discharge in whole or

in part of the obligations on the notes to the investors.

110.    Plaintiffs have paid an inflated interest rate that, upon information and

belief, would not have been agreed to but for the failure to understand the documents and

otherwise disclose the true terms and costs of the loans, tangential services, and out-of-

pocket costs and that the housing market would not, as represented by the Defendants

and their agent, Fremont Investment & Loan, continue to increase in value but would,

because of the acts of the Defendants, crash and cause catastrophic loss of value in the

real estate market.

111.    Upon information and belief, Defendants, and each of them, retained and

continue to retain these ongoing and escalating profits to the detriment of Plaintiffs,

contrary to the fundamental principals of fairness, justice, and good conscience.

112.    Upon information and belief, all payments made to the Defendants servicing

the Plaintiffs' mortgages are not due to the Defendants who are making demands for

collection.

113.    The Defendants who have serviced the loan of the Plaintiffs did not fund the

loan, did not loan any money to the Plaintiffs, and are not holders in due course of the

notes of the Plaintiffs and have no lawful right to foreclose upon Plaintiffs' home if

Plaintiffs do not make the payments according to the note that were executed by Plaintiffs

at the time the loans were received.

114.    Upon information and belief, all sums advanced to Plaintiffs for a loan by

investors has been repaid, settled, satisfied or otherwise are no longer outstanding.

-17-

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HSBC 00043

LITTON LOAN LEGAL DEPT Fax:713-966-86          Oct 21 2009 09:14am P047/099

115.    Accordingly, Defendants, and each of them, should be ordered to return all funds obtained as a result of their deceptive scheme on Plaintiffs.

## SIXTH CLAIM FOR RELIEF

### (Relief requested by Plaintiffs)

116.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully set forth in this claim.

117.    Plaintiffs Burke have been issued a notice of eviction from their property at 4695 Cavataio Circle, Reno, Nevada and it is presently held an REO by HSBC.

118.    Plaintiffs Smith have been given an intent to foreclose notice by Carrington.

119.    Plaintiffs have no adequate remedy at law to stop these unlawful foreclosures and evictions without this Court's intervention.

120.    Plaintiffs will suffer irreparable harm from the loss of their homes and Defendants will suffer nothing since no payments are owed to them on account of the notes and mortgages have been discharged in whole or in part and any foreclosure pursued by them will be and is and has been unlawful.

### (Declaratory Relief)

121.    As alleged in Plaintiffs' claims regarding Defendants' wrongful foreclosure, unjust enrichment and conspiracy, Plaintiffs' rights have been violated.

122.    Defendants have threatened foreclosure against Plaintiffs for which Defendants are not owed any payments, have no lawful right to foreclose and have unlawfully deprived or attempted to deprive Plaintiffs of their homes and further have failed to notify the Plaintiffs of the discharge of their obligations on the notes associated with their mortgage.

-38-

HALKA & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HSBC 00044

LITTON LOAN LEGAL DEPT Fax:713-966-86          Oct 21 2009 09:14am P008/099

123.   Plaintiffs seek a declaratory judgment against Defendants stating that Defendants have violated Plaintiffs' rights and that the Defendants have no right to foreclose on the Plaintiffs' homes and that the Defendants are entitled to no further funds from the Plaintiffs.

(Reformation)

124.   Plaintiffs have been intentionally misled about the terms and conditions of the agreements entered into with Fremont Investment & Loan and have no enforceable contract with any of the Defendants.

125.   The Plaintiffs are entitled to a reformation of their agreements and notes as unsecured notes or as partially or wholly discharged notes and a right to reformation of the contracts with the persons or entities who are owed obligations because of funding of the loans of the Plaintiffs.

(Quiet Title)

126.   The Plaintiffs are entitled to have the property representing their homes and as referred to herein quieted in their names until and unless some party comes forward in this litigation who has a right to enforce the deeds of trust upon their homes free and clear of all encumbrances.

127.   Plaintiffs have been required to retain counsel in this matter to protect Plaintiffs' rights and seek these remedies and have incurred attorneys' fees and costs in this matter.

WHEREFORE, Plaintiffs pray this court enter an order providing relief as follows:

1.   For award of damages against Defendants and each of them on Plaintiffs' claims as applicable as alleged above in an amount to be shown at trial;

-59-

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800; FAX (775) 329-5819

HSBC 00045

2    For an award of damages against Defendants, and each of them, on the Plaintiffs' state law claims, whether general, special or punitive as alleged above, in an amount to be shown at trial;

3.    For an award of attorneys' fees and costs as provided by law;

4.    For an order of reformation of the agreements on behalf of named Plaintiffs;

5.    For an order of restitution on behalf of Plaintiffs;

6.    For a temporary restraining order and preliminary and permanent injunction on behalf of Plaintiffs against the Defendants Carrington, Litton, HSBC and MERS, in addition to each and every one of their respective officers, agents, employees, servants, and attorneys, and those persons in active concert or participation with any of them or each of them, as specifically alleged above from transferring any interest in the subject properties, from proceeding with any foreclosure action as to any of the Plaintiffs' residences and/or proceeding with any collection action against the Plaintiffs;

7.    For a declaratory judgment holding that Plaintiffs' rights were violated as alleged above;

8.    For an order quieting title in the name of the Plaintiffs respectively the properties containing their homes without encumbrances unless a party comes forward who has the right to enforce the obligations as recited hereinabove;

9.    That Plaintiffs have and recover from the Defendants pre-judgment interest as may be determined by statute and rule;

10.    Pursuant to Nevada Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues of fact in this action; and

-40-

HSBC 00046

LITTON LOAN LEGAL DEPT Fax:713-966-08.           Oct 21 2009 09:15as  P050/099

11.       That this Court grant such other and further relief as it deems just and proper.

## AFFIRMATION

Pursuant to NRS 239B.030, I hereby certify that the foregoing document does not contain the social security number of any person.

DATED this 16th day of October, 2009.

HAGER & HEARNE

/s/ Treva J. Hearne, Esq.
Robert R. Hager, Esq.
SBN: 1482
Treva J. Hearne, Esq
SBN: 4450
245 E. Liberty St., Ste. 110
Reno, NV 89501
Tele: (775) 329-5800
Attorneys for Plaintiff

-41-

HSBC 00047

LITTON LOAN LEGAL DEPT Fax:713-966-88.    Oct 21 2009 09:15am P051/099

## INDEX OF EXHIBITS TO
## COMPLAINT

1.    Exhibit "1" is a true and correct copy of the Adjustable Rate Note  dated February 20, 2004 , signed by Timothy Burke and Dawn Burke, and the Deed of Trust signed on February 20, 2004 , signed by Timothy Burke and Dawn Burke.  Exhibit "1" consists of 27 pages.

2.    Exhibit "2" is a true and correct copy of the Note dated February 13, 2006, signed by Russell L. Smith and Shirley Hope Smith and  the Deed of Trust dated February 13, 2006, signed by Russell L. Smith and Shirley Hope Smith.

-42-

HSBC 00048